No. 19,467.

WILLIAM M. SMITH, *Appellee,* v. THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. FEDERAL EMPLOYER'S LIABILITY ACT—*Personal Injuries—Demurrer to Evidence Properly Overruled.* In an action under the federal employer's liability act (Part 1, 35 U. S. Stat. at Large, ch. 149, 4 U. S. Comp. Stat. 1913, §§ 8657-8665), brought by a brakeman injured by a defective car door falling on him, a demurrer to the plaintiff's evidence is properly overruled when:

(a) The evidence shows that the plaintiff did not know of the defect causing the injury until after the injury occurred, and for that reason had not assumed the risk of injury from that defect.

(b) The evidence shows that the defendant was guilty of negligence in sending out a defective car without inspection.

(c) The evidence shows that a release and settlement, admitted by plaintiff, was procured by making false representations as to future employment.

2. SAME—*Opinion of Physician Based on History of Case Incompetent.* It is error to permit physicians, testifying as experts, to testify concerning the condition of a person examined by them, and base their opinion partly on the history of the case; but where there is ample evidence, not based on the history of the case, to establish all the facts so erroneously testified to, such error is not sufficient to cause a reversal of a judgment.

3. SAME — *Conversation — Competent Evidence.* When it is sought to prove the details of a conversation, all that was said is competent, even if part of that conversation did disclose the contents of documents not introduced in evidence.

4. SAME—*Proper Instructions to Jury.* In such an action as is described in section 1 of this syllabus, it is not error to instruct the jury:

(*a*) That the risk assumed by the plaintiff was the ordinary risk of his employment, after the defendant had used reasonable and ordinary care to furnish a reasonably safe place in which to work and reasonably safe appliances with which to work.

(*b*) That the defendant was guilty of negligence if it sent out a car in bad order without inspection.

(*c*) That the jury should bring to their assistance their good judgment, common sense, observation and experience in life.

(*d*) That the plaintiff had a right to assume that the defendant had performed its duty in exercising reasonable and ordinary care to provide a reasonably safe place in which to work and reasonably safe tools with which to work.

(*e*) Concerning contributory negligence, without specifically defining that expression, and without stating a specific rule for the reduction of damages on account of contributory negligence, when no instruction is requested giving such definition or stating such rule.

5. SAME—*Refusal of Requested Instructions—Not Error.* It is not error to refuse to give instructions:

(*a*) Concerning the duty of making an unsafe place safe, where there is no such duty imposed on the plaintiff as to the defect which caused his injury.

(*b*) Concerning assumption of risk, where the court has fully covered the subject in the instructions given.

6. SAME—*Contributory Negligence—Not Proven.* The finding of the jury that the plaintiff was not guilty of contributory negligence was supported by sufficient evidence.

Appeal from Bourbon district court; CHARLES E. HULETT, judge. Opinion filed May 8, 1915. Affirmed.

*R. R. Vermillion,* and *W. F. Lilleston,* both of Wichita, for the appellant; *W. F. Evans,* of St. Louis, of counsel.

*J. I. Sheppard, James G. Sheppard,* and *Kate Sheppard,* all of Fort Scott, for the appellee; *A. M. Keene,* of Fort Scott, of counsel.

The opinion of the court was delivered by

MARSHALL, J.: This is an action for damages for personal injury. The plaintiff recovered judgment for $12,500. The defendant appeals.

The plaintiff, a brakeman, was injured by a car door falling on his head. The negligence alleged is that the defendant did not inspect the car at its yards in Kansas City, Mo., and sent the car out with defective hangings for the door. The defenses are, a general denial, contributory negligence on the part of the plaintiff, assumption of the risk by him, and a release and settlement given by him to the defendant. The plaintiff's reply is, that the release was procured by fraud.

The defendant was operating an interstate railroad between Kansas City, Mo., and Fort Scott, Kan. The plaintiff was employed on that road as a brakeman. He left Kansas City, Mo., November 12, 1912, at 9:15 p. m., with a freight train, bound for Fort Scott, Kan. It was his duty, when the train stopped, to examine the cars for any defect that might appear, and so far as he could, repair such defect. This train stopped at Olathe, Paola, and Pleasanton, reaching Pleasanton at 2:47 a. m., November 13, 1912. At Pleasanton the plaintiff discovered a car door hanging by one hanger or roller. He attempted to replace the door, when it fell on him, struck him on the top of his head, and fractured the inner plate of his skull. The iron bar or rod upon which the car door moved was bent, and the holes through which the bolts containing the hangers passed were enlarged so that they would not hold the bolts. The plaintiff had examined the cars at Olathe and Paola, and this car door appeared all right at both places. The plaintiff returned to his home in Kansas City, remained there a month or so, and finally went to the Frisco hospital in St. Louis. He remained there twenty-nine days, and was then released. At the time he was released he had conversations with physicians

in charge of the hospital, who told him that there was nothing the matter with him, and that he was able to go back to work. The plaintiff signed a release and settlement of his claim against the company for $100. When this was signed, the general claim agent of the defendant said, "Smith, we have made up our minds to give you $100.00 and your position back at Kansas City." Smith said, "Are you sure now that I will get my job back?" The agent replied, "Yes, that is always considered in the settlement." A letter was given the plaintiff to the company's superintendent of the terminal at Kansas City, advising the officer that the claim had been settled. The agent told the plaintiff to take the letter, give it to the terminal agent at Kansas City, and he could get his position back. The plaintiff applied for employment, and was refused, and among the reasons given for such refusal were, that the plaintiff had been paid $100 when he lost only ten days, and that the report of the physicians who examined him was that he was incompetent, and for that reason they were compelled to keep him out of the service.

The jury made the followng special findings:

"1. Was plaintiff induced to sign a written release to the defendant for damages, for plaintiff's alleged injuries at Pleasanton, Kansas, on the occasion complained of, by reason of any fraud on the part of the defendant? Ans. Yes.

"2. If you answer the preceding question in the affirmative please state fully in what the fraud consisted and by whom the fraud was committed. Answer: By representing to plaintiff that he was all right and able to go to work—by Doctors Kale and Farris. And also by the claim agent, Mr. Rogers—representing that his position would be waiting for him when he got back to Kansas City.

"3. If you find for plaintiff, please state fully in what respects, if any, defendant was negligent on the occasion complained of, and through what employees, if any, defendant was thus negligent. Answer: By allowing this car to go out on the road with a door in a dilapidated condition. No evidence to show what employee negligent.

Smith v. Railroad Co.

"4. Please state fully at what place or places, if any, on the trip or run in question, the plaintiff inspected car No. 46,597, mentioned in evidence, before he inspected it at Pleasanton, on the occasion complained of. Answer: Paola and Olathe.

"5. Was the car door in question off the track and hanging by only one hanger when the car left Kansas City, Missouri, in the freight train mentioned in evidence? Answer: No.

"6. Do you find that ordinarily a freight car door off the track and hanging by only one hanger was apt to fall over, as the one in question did, if a brakeman attempted to lift it back in the manner plaintiff did, on the occasion complained of? Answer: No.

"7. Do you find from the evidence that on said occasion plaintiff was guilty of contributory negligence? Answer: No.

"9. Do you find that the car door mentioned in evidence fell on plaintiff's head on the occasion complained of, as a result of his lifting off the track the remaining hanger by which said car door was hanging? Answer: No."

We will follow the defendant's complaints in the order set out in its brief.

(1) The defendant contends that the demurrer to the plaintiff's evidence should have been sustained; (a) because that evidence showed that the plaintiff assumed the risk of the injury alleged; (b) because it did not establish any alleged ground of negligence; (c) because it did not establish fraud in the settlement made by the plaintiff with the defendant.

(a) Did the plaintiff assume the risk of the injury alleged? He was a brakeman. He assumed the risk of injury resulting from that employment, but not the risk resulting from defects caused by defendant's negligence of which defects he had no knowledge. We may say that he assumed the risk involved in doing anything connected with his work, when working with a defective instrument, knowing what the defect was. At Pleasanton, the plaintiff found the car door hanging by one hanger. He attempted to replace the door.

He assumed the risk incident to replacing the door. He did not assume the risk consequent upon a defective condition of the car door, which he did not and could not see under the circumstances. It was in the nighttime. He had a brakeman's lantern. It did not give much light. The defects were high on the side of the car. The defective condition of rod and hangers was not discovered by the plaintiff until after he was injured. He did not assume the risk consequent upon these defects until after he had discovered the dilapidated condition of the car door. (*St. L., Ft. S. & W. Rld. Co. v. Irwin,* 37 Kan. 701, 16 Pac. 146; *Brinkmeier v. Railway Co.,* 69 Kan. 738, 77 Pac. 586; *Karns v. Railway Co.,* 87 Kan. 154, 123 Pac. 758.)

The defendant argues that the plaintiff was an inspector, a repairer; and that when injured he was engaged in making an unsafe place safe. Numerous authorities are cited, giving the law concerning the assumption of risk by these classes of employees. The plaintiff was not an inspector or a repairer, as those terms are used in the law of master and servant; neither was he engaged in making an unsafe place safe, as that expression is used in the decisions.

(*b*) The defendant next argues that there was no proof of the negligence alleged; that there was no proof that the car in question was in the train at or leaving Kansas City. We can not agree with the defendant in this matter. The train consisted of thirty-nine or forty cars, run from Kansas City to Fort Scott, and stopped on the way at Olathe, Paola and Pleasanton. The plaintiff passed this car in looking over the train at Olathe, Paola and Pleasanton. It must have been a part of the train when it left Kansas City or it would not have been in the train at the places named.

(*c*) The defendant argues that the settlement and release was admitted by the plaintiff, and that his evidence does not show that the settlement and release was procured by fraud. The defendant in its brief

states that the fraud alleged was that at the Frisco hospital in St. Louis Doctors Farris and Kale told plaintiff he was able to resume work when in fact he was not, but had a fracture of the inner table of the skull; and that Claim Agent Rogers, who settled with him, told him he would be reëmployed and he was not. The plaintiff's evidence tended to prove each of these allegations. The defendant seeks to avoid this by arguing that what the doctors said was matter of opinion, and therefore not sufficient to set aside the settlement and release, under *Railway Co. v. Bennett,* 63 Kan. 781, 66 Pac. 1018. The defendant argues that statements by the claim agent were without authority on their part, and that proof of these statements was an attempt to supplement a written contract (the settlement and release) by parol evidence of an oral one. We can not agree with the defendant in this matter.

We are of the opinion that the demurrer to the evidence was properly overruled.

(2) The defendant contends that on hotly contested issues of fact presented by the evidence the lower court permitted doctors, testifying for plaintiff as experts concerning his condition and injury, to give opinions admittedly based on the history of the case. Dr. S. A. Mabry, of Kansas City, testified concerning the plaintiff's injury. His opinions were based partly upon the history of the plaintiff's case as it was related to him. This was improper, under *A. T. & S. F. Rld. Co. v. Frazier,* 27 Kan. 463, 466; *Telegraph Co. v. Morris,* 67 Kan. 410, 413, 73 Pac. 108; *Betterment Co. v. Reeves,* 73 Kan. 107, 84 Pac. 560; and *Ballard v. Railway Co.,* ante, p. 343. A portion, but not all, of the testimony of Dr. Newman is subject to the same objection. Dr. Newman made an X-ray picture of the plaintiff's head. This picture showed a fracture of the inside plate of the plaintiff's skull, a spicula of bone extending from three-eighths to a half of an inch into the brain cavity. This witness had the plaintiff under observation for a couple of days, and noticed his conduct

and manner of speech.   He testified that this piece of
bone, extending into the brain cavity, probably would
produce insanity or paralysis.   Dr. Hopper testified
that the X-ray picture showed a spicula of bone extend-
ing into the brain cavity, and that the plaintiff may
become materially deranged mentally, and may lose
his mind at any time, or may develop epilepsy.   Dr.
Hopper examined the plaintiff, and observed him, and
testified that there was something peculiar in plaintiff's
manner; that he appeared stupid, depressed, low-
spirited, and slow to answer questions; that his eyes
had lost their brilliancy and had a dull expression; and
that these things indicate pressure on the brain.   This
examination was made, and conclusion reached, before
the X-ray picture was taken.   It does not appear that
Dr. Hopper's testimony was based on any history of
the case.   Dr. Jerman testified that the X-ray picture
showed the appearance of a fracture of the skull, show-
ing a spicula of bone a little forward and down.   That
the plaintiff was injured, that his skull was fractured,
that epilepsy, paralysis or insanity may result from
the injury, were established by competent evidence.
This expert evidence, based partly on the history of
the case, does not necessarily compel a reversal of the
judgment, because there was expert evidence, not based
on the history of the case, sufficient to sustain the ver-
dict and the judgment based thereon.   (*C. B. U. P.
Rld. Co. v. Butman*, 22 Kan. 639; *Osborne, Ex'r, v.
Young*, 28 Kan. 769; *Whittaker v. Voorhees, Sheriff*,
38 Kan. 71, 15 Pac. 874; *Benton v. Bealey*, 71 Kan. 872,
81 Pac. 196; *Heery v. Reed*, 80 Kan. 380, 102 Pac. 846;
*Chandler v. Bowersock*, 81 Kan. 606, 607, 106 Pac. 54;
*Campbell v. Brown*, 85 Kan. 527, 117 Pac. 1010.)

(3)  Complaint is made concerning the evidence of
the plaintiff, in which he testified that one of the de-
fendant's officers, Superintendent Coppage, said to him,
"We have got a report here from St. Louis Hospital
which states that you are an incompetent man to keep

in the service of the Company any longer." The complaint is, that this was not the best evidence; that the report was the best evidence of its contents. The plaintiff testified to the conversation between him and Superintendent Coppage, when the plaintiff went to seek reëmployment after his return from the St. Louis hospital. It was proper for the plaintiff to testify concerning that conversation, although in that conversation Superintendent Coppage detailed the contents of the report, or supposed report, made to him. That does not render the conversation incompetent. The testimony does not attempt to show that there was a report, or what the contents of the report were. The testimony relates a conversation and nothing more.

(4) Defendant complains of error in the instructions given, in the following particulars: (a) the assumption of risk; (b) the negligence of the defendant; (c) the duty of the jury; (d) plaintiff's right to assume that defendant had performed its duty; and (e) contributory negligence of plaintiff.

(a) Complaint is made that the lower court instructed the jury that the only risks assumed by plaintiff were those ordinary risks which he assumed on entering the employment, as incidental thereto, and that such ordinary risks were only those which occurred after the employer has used reasonable and ordinary care to furnish the employed with a reasonably safe place to work and with reasonably safe appliances with which to work. The defendant argues that if the defendant was not negligent it was not liable in any event; that if the jury thought it was negligent, still the plaintiff could assume even those risks arising from such negligence, provided he understood and appreciated them and incurred them without protest or promise of repair.

The weakness in this argument is, that the plaintiff did not know of the defective condition of the rod and of the door hangers. It does not appear that the de-

fendant requested an instruction on this subject in line with its argument.

We have discussed assumption of risk in another part of this opinion.

(*b*) Complaint is made of the instruction concerning defendant's negligence in sending the car out of Kansas City in bad order. It is argued that there was no evidence to show that this car was put in the train at Kansas City. This question has been disposed of. It is further argued, that there was no proof that inspections were made at terminal points. It was the duty of the defendant to see that its cars were in a reasonably safe condition. If it sent the cars out in bad condition, it was negligent somewhere.

(*c*) It is claimed that the court erred in instructing the jury as follows:

"After having carefully considered all the evidence in this case, bring to your assistance your good judgment, common sense, observation and experience in life, and say what weight should be given to the statements of each witness and find by your verdict what is the truth upon the issues joined in this case."

The defendant cites *U. P. Rly. Co. v. Shannon*, 33 Kan. 446, 6 Pac. 564; *Waite v. Teeters*, 36 Kan. 604, 14 Pac. 146; *Clark v. Ford*, 7 Kan. App. 332, 51 Pac. 938, in support of its complaint. In *U. P. Rly. Co. v. Shannon*, supra, this court said:

"A jury are not to use their own judgment in making up a verdict upon a subject calling for particular knowledge or experience, not within the general knowledge they have in common with the rest of mankind." (Syl. ¶ 1.)

This permits the jury to use the general knowledge they have in common with the rest of mankind. In *Waite v. Teeters*, supra, the direction to the jury that they might use their general knowledge in determining value was held misleading and erroneous. In that case there was no evidence on the subject, and the value under consideration was not one common to persons

generally. In *Clark v. Ford,* supra, the instruction was that the jury might take into consideration such knowledge of the value of a jack as was common to all of them.

The instruction here complained of is not open to the criticism made of the instructions in either of these three cases. How are jurors to arrive at verdicts if the rule embodied in this instruction is not followed? If their good judgment, common sense, observation and experience in life are not to be used by jurors in reaching their conclusions, verdicts will be more unsatisfactory than at present. It is impossible for a juror or any other man to come to any correct conclusion on any subject without using the means here complained of. (*Missouri River R. R. Co. v. Richards,* 8 Kan. 101; *Craver v. Hornburg,* 26 Kan. 94; *Sanford v. Gates,* 38 Kan. 405, 16 Pac. 807; *Young v. Irwin,* 70 Kan. 796, 798, 79 Pac. 678; *Cloud County v. Morgan,* 7 Kan. App. 213, 52 Pac. 896; Note, 37 L. R. A., n. s., 790, 793.)

(*d*) The defendant complains that the trial court instructed the jury that the plaintiff had a right to assume that the defendant had performed the duty of exercising ordinary and reasonable care to provide him with a reasonably safe place to work and reasonably safe tools to work with, and to keep them in a reasonably safe condition of repair, and argues that it was through the plaintiff himself that the defendant was trying to ascertain the condition of the cars and the car doors in the train; that for that purpose, the plaintiff was the master; that he had no right to assume anything that the very purpose of his going along the train to inspect the cars and car doors was to see if anything was wrong. The plaintiff had the right to assume that the defendant had exercised ordinary and reasonable care to see that this car and car door were in proper condition before the car was put in the train, and the trial court was right in so instructing the jury.

(*e*) The next complaint is of the instruction concerning contributory negligence. It is contended that no definition or test of contributory negligence was given. The answer is, that none was asked for. It is argued that this instruction did not give a proper measure for the diminution of damages by reason of contributory negligence. Again we say, no other instruction was requested. The defendant says that in this instruction the court assumed that the Frisco railroad has a terminal at Kansas City, Mo. This is a matter of such common knowledge throughout the West, that the court was probably justified in taking judicial notice of that fact.

(5) The defendant complains of the refusal of the court to give instructions requested by it. These concern (*a*) making unsafe places safe, and (*b*) assumption of risk.

(*a*) The defendant requested the court to instruct the jury that the law requiring the master to provide reasonably safe machinery and reasonably safe places for his servant does not apply where the servant is engaged in repairing a place which has become out of repair. The plaintiff's duty to replace the car door did not imply a duty to repair the rod on which the door rolled, or the hangers by which it was suspended. It was the defendant's duty to see that this rod and these hangers were in proper condition when the car was put into the train. The instruction requested was properly refused, because it did not take into consideration the duty of the defendant.

(*b*) The defendant requested a number of instructions covering the assumption of risk by the plaintiff. The court, in its instructions, fully covered the law governing assumption of risk by the plaintiff, and it was not necessary to repeat them at the request of the defendant.

(6) The defendant contends that the finding of the jury that the plaintiff was not guilty of contributory negligence was contrary to the evidence and admissions

of the plaintiff himself. We can not agree with the defendant in this contention.

We have touched upon each proposition argued in the defendant's brief, and are unable to agree with the defendant in any of its contentions. The judgment is affirmed.