Belknap,
June 21, 1938.

WALLACE A. BEARDSELL, *by his mother and next friend,*

*v.*

TILTON SCHOOL.

PRISCILLA A. BEARDSELL *v.* SAME.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wyman* orally), for the plaintiffs.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the defendant.

MARBLE, J.  The plaintiff had finished football practice on the afternoon of the accident and was attempting to enter a conveyance which the defendant had provided to transport students to and from the athletic field.  Ordinarily a Concord truck, so called, was employed for this purpose, but on the day in question this truck was in the garage for repairs and a Ford dump truck was used in its place.  The Concord truck was equipped with steps which could be attached to the rear.  There were no steps that could be attached to the dump truck.  The driver failed to let the tailboard down and the boys got in over the side of the truck by stepping on one of the rear wheels.

When either of the trucks was being loaded, the defendant required a member of the faculty to be present to take charge of the boys and to see that none of them jumped on when the driver was about to start.  The usual method of informing the boys that no more were to get on was for the instructor in charge to blow a whistle.  The football coach was the faculty member on duty that afternoon.  He testified: "Normally I went up on the third truck . . . . This particular day I was going up on the first . . . . Usually it worked out so there was somebody there each time, because we had three or four men down there, and some came up earlier than others, and we worked it out that way.  It wasn't my responsibility the first truck, more than anybody else's, but that particular day it was mine, because I was going up with the first group."

But the driver of the truck did not wait for the coach to arrive. Having parked the truck near the entrance to the field, he got down from the cab and stood at the rear while the boys were getting in. He then returned to the cab and started the truck, although he knew that no faculty member was there to exercise the required supervision.  The coach, who was out on the athletic field, saw him as he was about to drive away and ran forward, shouting and blowing his whistle.  Meanwhile the plaintiff had commenced to climb in over the left rear wheel.  The truck started, however, before he had reached a position of safety.  He fell to the ground, and the wheel ran over him.  He testified that he "came to" on the way up

to the school infirmary, that he could tell nothing about the circumstances under which the accident happened, and that the last thing he remembered was picking up his hood under the goal post and starting for the truck.

Counsel, invoking the rule of *Wright* v. *Railroad*, 83 N. H. 136, 138, contend that no duty of protection devolved upon the defendant, since the plaintiff must have fully understood the danger he encountered.

The difficulty with this argument lies in the assumption that the plaintiff knew when he stepped upon the wheel that the truck was likely to move. The plaintiff worked at the school in order to earn a part of his tuition, and the boys so employed were required to come up from the field on the first trip made by the truck. The Concord truck was large enough to carry all the boys who worked; the dump truck was not. It was the first time the dump truck had been used for that purpose that season, and there is no suggestion that any of the working boys had been told to wait for the second trip. While the plaintiff testified that it was the custom, when the truck was loaded with the proper number of boys, for the driver to start back for the school, he did not state that it was the custom for him to start back before the faculty member in charge of the boys had arrived.

Moreover, it is a reasonable inference that the truck was not overloaded when the driver started away from the field. A teacher, present that afternoon to watch the football practice, stated that one or two boys got out of the truck just before the plaintiff tried to get in. The coach did not blow his whistle until he saw that the driver was about to leave. He said: "I saw the truck on my way over was either ready to start or had just started, I saw the danger of any more getting on, so I blew my whistle several times and hollered to them to stop." On the testimony of several witnesses it could be found that when the plaintiff undertook to climb in over the wheel the truck was standing still. He may or may not have heard the whistle. Football practice was still going on, and in the course of the practice the whistle was frequently blown. The coach admitted that if a boy near the truck "heard a whistle blown out on the football field" he "wasn't to interpret" it "as interfering with his actions" over by the truck. Two witnesses (the director of athletics and a member of the faculty), whom the coach passed while hurrying from the field, did not "remember hearing any whistle" at all.

There was no error in submitting the issues of negligence and contributory negligence to the jury.

It is understood that the defendant makes no claim to immunity on the ground that it is an eleemosynary institution. The only evidence bearing on the question is to the effect that Tilton School is a "paying school," charging $850 a year for room, board, and tuition. The motions for nonsuits and directed verdicts were properly denied.

The defendant excepted generally to the failure of the court to grant its requests for instructions "except as covered" by the charge. One of these requests was as follows: "The defendant requests the Court to instruct the jury [that] . . . It was the duty of the plaintiff Beardsell to exercise reasonable care for his own safety under the circumstances and if his actions were negligent or careless and caused or contributed to cause his injuries in the slightest degree, even if you should find there was some negligence on the part of the School, then your verdict will be for the defendant." The court gave this requested instruction with the exception of the words "in the slightest degree." "To contribute" means "to have a share in any act or effect." The omitted phrase was not essential, therefore, to a correct statement of the law. Counsel did not call the court's attention specifically to the omission, and since the instruction given was a substantial compliance with the request, the general exception is unavailing. *Tetreault* v. *Gould*, 83 N. H. 99, 104.

The Presiding Justice charged the jury that "if the vehicle used presented extraordinary hazards," that would be a condition for them to consider "in determining what reasonable care required." The defendant excepted to this instruction on the ground that there was "no evidence of any extraordinary hazard in making use of the truck." The dump truck, because of the height of its body and the lack of steps, could be found to be more hazardous than the truck ordinarily used. The football coach expressed the opinion that it was "a much more dangerous thing for the boys to get into than the other truck." The exception is overruled.

In the course of his argument to the jury counsel for the plaintiffs, after stating that the burden of proof as to contributory negligence was on the defendant, said: "I ask you to consider that having the list available of the boys that were engaged in football practice . . . in the fall of 1934 . . . they have made not the slightest effort to get any up here except the Emery boy." The defendant excepted to the ruling of the court permitting this argument to stand. No question is raised as to the soundness of the rule of *Mitchell* v. *Railroad*,

68 N. H. 96, 116, that where accessible witnesses of a transaction in dispute are not called, either party may properly argue that his opponent did not summon them because their testimony would have been unfavorable. It is claimed however, that there is here no evidence that the boys referred to were accessible. According to the testimony of the football coach, seventy-five boys were present on the athletic field the afternoon of the accident. These cases were tried two and a half years later. It was a fair inference that some of those boys were then in the school or otherwise accessible. It was only necessary that they should be "seemingly accessible." *Osgood* v. *Maxwell*, 78 N. H. 35, 36; *Brito* v. *Company*, 79 N. H. 163, 164.

The football coach testified that he "hollered" to the boys as well as whistled just as the truck was about to start but that he had no talk with the driver about the number of boys on the truck or "any such talk as that" while he was "over in the field eighty feet away" or "at any time that day before the accident." Plaintiffs' counsel in his argument referred to "this hollering, which is denied by the very man who is said to have hollered." A little later defendant's counsel interrupted the argument to object to the statement that "the man who hollered denied hollering." Thereupon plaintiffs' counsel, requesting leave to make an explanation before an exception was allowed, asked the jury to take their own recollection as to whether or not the coach said he "hollered" or communicated in any way with the driver. (See *State* v. *Slocinski, ante* 261). He then continued: ". . . Jordan [the driver] claimed Davis [the coach] spoke to him, but didn't Davis say he didn't say anything to Jordan before the truck started . . ." As thus restricted, the statement was sufficiently justified by the evidence.

Exceptions not mentioned in the defendant's brief or oral argument are held to be waived.

*Judgments on the verdicts.*

All concurred.