HIBBERT BAKER, *Adm'r v.* SALVATION ARMY, INC. *& a.*

**2**

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Sewall, Varney & Hartnett* and *Henry M. Fuller* (*Mr. Fuller* orally), for the defendants.

PAGE, J. Taken most favorably for the plaintiff, the evidence discloses that Hibbert Baker was driving his car northerly upon the Lafayette highway in the town of Hampton at midday. It was raining very hard. If there was any advantage in vision it lay with the driver of a south-bound car, since the rain beat somewhat from the north. Mr. Baker stopped at the intersection of the Post Road, intending to enter it by a left-hand turn. He looked in his rear-vision mirror and also forward, saw no car in either direction, resumed progress and turned left. As he started, he again looked to the north and saw nothing.

He proceeded on a curve across the south-bound lane a distance of about forty feet and had nearly cleared the Lafayette Highway

when the rear of his automobile was struck by the defendant's car, which was proceeding southerly. For convenience Mr. Perrett will be referred to as the defendant.

The deceased was the wife of Hibbert Baker, who is the sole beneficiary of any judgments that may be recovered in this action. It is therefore necessary to determine whether he was negligent as a matter of law. *Niemi* v. *Railroad,* 87 N. H. 1. The issue of the defendant's negligence is not before us, for it seems to be conceded that there was evidence for the jury on that point.

Mr. Baker testified that the heavy rain made it impossible for him to see more than 250 feet to the north. Though there was evidence tending to cast doubt on his testimony, the jury might have found in his favor on this issue. Though he would have been bound to observe the law of the intersection, by yielding the right of way to a south-bound car if a collision was reasonably to be anticipated (*Belanger* v. *Berubé,* 88 N. H. 191), he might properly have turned into the Post road if a person of average prudence in his position would have thought that there was no danger of a collision. *Gendron* v. *Glidden,* 84 N. H. 162, 166.

The defendant's car would have been beyond the range of Mr. Baker's vision at the moment he began to turn. While that range was no more than 250 feet, he might be found to have acted carefully upon the presumption that the driver of any southbound car could see at least an equal distance and would exercise reasonable vigilance in discovering the plaintiff's car and avoiding a collision. The defendant did not see the turning of the Baker car until he was within fifty or sixty feet of it. Findably he could have seen it sooner and materially have checked the progress of his car, or have avoided a collision by a left-hand swing. When the plaintiff began to turn, more than half of the traveled part of the highway was open for that purpose, since no other car was coming in either direction. At the time of collision the defendant could have used a clear width of about thirty feet.

Considering these facts, the jury could properly find the plaintiff free from causative fault. The fact, if it could be found, that the plaintiff could have seen further than he did, would not charge him with negligence, providing he was justified in supposing it reasonably safe to proceed after taking such a look as he did. It could be found that the failure of the defendant (driving at forty miles an hour or more) to see the movement of the plaintiff's car until they were within fifty or sixty feet of each other, was the sole cause of the

collision. *Fitzpatrick* v. *Parsons*, 90 N. H. 458. The motions for nonsuits and directed verdicts were properly denied.

Counsel for the plaintiff argued to the jury that Mr. Baker's testimony as to the limit of visibility was supported by Mr. Perrett's testimony that he did not become aware of the presence of the plaintiff's car until he was within fifty or sixty feet of it. Upon objection the argument was withdrawn and the jury instructed to strike it from their minds.

This was followed by the statement that Mr. Baker had to look three ways, while Mr. Perrett had to look only ahead. This also was withdrawn, and the same instruction was given. The defendants wish this to be treated as a wilful repetition bound to be prejudicial (*Bruce* v. *Company*, 87 N. H. 462), since as a preliminary to the first-mentioned argument plaintiff's counsel had remarked that Mr. Perrett had only to look ahead. But the first objection was not to this remark, but to the conclusion regarding the limit of visibility. The wilfulness of the repetition does not appear, since the former objection went to the conclusion and not to the premise.

The next argument to which objection was made was that the speed of the defendant's car was in excess of forty miles an hour. Though there was some evidence to support this argument, the remark was withdrawn, and the jury were instructed to pay no attention to it.

While the first two statements had little or no factual support, their withdrawal, followed by the instructions given and the denial of the defendant's motion to set aside the verdicts, may be regarded as establishing lack of prejudice. *J. P. Goddard &c. Company* v. *Bugbee*, 89 N. H. 34; *Heilman* v. *Whalley*, 90 N. H. 215. There is nothing to indicate that the jury disregarded the instructions (*Davidson* v. *Corporation*, 89 N. H. 535), and the finding involved in the denial of the motion to set aside must be sustained. *Bruce* v. *Company, supra, p.* 464.

One Morrill, a passenger in the defendant's car and an officer of the army, was in the court room during the trial (a fact brought to the attention of the jury by the defendant) but was not called to testify. Plaintiff's counsel alluded to this fact, and the defendants excepted. Plaintiff's counsel later argued that if Morrill had been able to testify that the plaintiff did not stop before turning, he would have been called. To this also the defendants excepted. The comment and argument were proper, *Beardsell* v. *Tilton School*, 89 N. H. 459, 462; *Woodman* v. *Peck*, 90 N. H. 292.

The defendants contend that the rule of fair comment should be limited, as in some jurisdictions, to cases where the witness is not available to the commenting party. They concede that the case of *Lee* v. *Hustis*, 79 N. H. 434 is opposed to their view, but suggest that it be overruled. Reason does not support the suggestion. "It is commonly said that no inference is allowable where the person in question is *equally available* to both parties; particularly where he is actually in court; though there seems to be no disposition to accept such a limitation absolutely or to enforce it strictly. Yet the more logical view is that the failure to produce is open to an inference against both parties, the particular strength of the inference against either depending on the circumstances. To prohibit the inference entirely is to reduce to an arbitrary rule of uniformity that which really depends on the varying significance of facts which cannot be so measured." Wigmore, Evidence, (2d *ed.*), *s.* 288. This states the reason on which our rule rests. *Mitchell* v. *Railroad*, 68 N. H. 96, 116.

Plaintiff's counsel also argued that Mr. Perrett created an emergency, that his inattention and excessive speed resulted in his not seeing the Baker car until too late "to act very well." The exception to this argument presents no question of law. Two contrasting theories were placed before the jury. One was that the plaintiff did not stop, but carelessly and suddenly turned in front of the defendant's car, thus creating an emergency. The other was that he stopped, looked, started and turned, while the defendant inattentively drove into a position of danger from which he could extricate neither himself nor the plaintiff. It was proper to argue this view.

But one more question remains. Were the verdicts excessive? The deceased was sixty-six years of age. She had been in good health, had attended to all her household duties, and had a capacity to earn. To the extent that she would probably have exercised this capacity for the benefit of her husband in excess of the cost to him of her maintenance, recovery may be had. *Morrell* v. *Gobeil*, 84 N. H. 150, 152. Her expectancy of life was ten and a half years or more. This warranted the return of substantial damages for loss of earning capacity.

Her hospital, medical and nursing charges were $637, and her funeral charges were $283. These were recoverable. P. L., *c.* 302, *s.* 12.

The statute also authorizes damages for conscious physical and mental suffering, which were intense. She had five broken ribs and

a compressed fracture of the first lumbar vertebra. She was placed in a cast that caused much pain. Breathing was so difficult and painful that morphine had to be administered for a fortnight. She became panicky, was certain that she was going to die, cried out for help. About three weeks after the accident the physical and mental strain affected her sanity. In a fortnight more she became violent and unmanageable. She was removed to the State Hospital, a case of psychosis due to the accident. There she died as a result of the accident, fifty days after it happened. It cannot be said that the Presiding Justice made a clear error when he found that there was no clearly improper conduct by the jury. *Wisutskie* v. *Malouin*, 88 N. H. 242.

*Judgments on the verdicts.*

All concurred.