Hillsborough, }
Nov. 5, 1929. }

LAURA GENDRON *v.* MARTIN W. GLIDDEN.

*Thomas J. Leonard* and *Albert Terrien* (*Mr. Leonard* orally), for the plaintiff.

*Hamblett & Hamblett* and *Alwin A. Lucier* (*Mr. Robert B. Hamblett* orally), for the defendant.

SNOW, J. The accident occurred at the intersection of Harbor avenue, running north and south, with Bowers street which crosses

it at right angles. As limited by the curbings, the traveled portion of the former is thirty-eight, and of the latter twenty-three or twenty-four feet. Sidewalks border each street.

The plaintiff was one of four invited guests riding in an Oakland touring car driven by her brother-in-law, one Pelletier, who was its owner. He was proceeding southerly on the right hand side of Harbor avenue. As the front end of his engine reached the southerly curbing of Bowers street the right rear wheel of his car was hit by the bumper and right forward wheel of the defendant's car which was proceeding easterly on the right hand side of said street. The defendant was driving and alone.

The impact turned the Pelletier car half way around leaving it in the middle of the avenue facing north and about its length south of its position at the instant of the collision. The plaintiff, who was the middle one of the three occupants of the rear seat, was thrown against the front seat and into the bottom of the car, while the occupant to her left was thrown completely out of the car and rendered unconscious. The others remained in the car. The rear end of the chassis was bent. Though able to proceed on its own power the car was "knocked out of commission." The defendant's car was stopped within the limits of the avenue without material change in its course. The right hand end of the double bar bumper thereon was twisted and turned up.

The view of a traveler approaching either from the north or the west was partially obstructed by a large tree at the northwest corner of the intersection, a smaller tree twenty-five feet westerly on Bowers street and an intermediate fence.

Pelletier testified that he had received the members of his party two blocks away; that up to a point twenty-five feet from Bowers street he had been traveling at fifteen miles per hour; that before reaching the intersection he reduced his speed to ten miles, and continued at that rate to the place of collision; that as he approached Bowers street he looked to his right and saw the defendant's car coming at a point about two or three times farther away from his line of travel than he (Pelletier) had to go to make the crossing; that he thought it was safe to cross and thereupon looked to his left giving no further attention to the defendant. As respects the defendant's speed and Pelletier's knowledge of it, the latter's testimony was conflicting. He stated that he knew the defendant was coming "fast" or "quite fast," but both on direct and cross-examination he explained that his knowledge on this point was based on "the

way he [the defendant] hit my car," and finally declined to say whether the defendant was coming fast or slow. Mrs. Pelletier who occupied the front seat with her husband testified that when twenty-five feet from Bowers street she saw the defendant's car at the top of the hill to the west, which was shown to be 475 to 500 feet from the avenue; that when she got to the corner she looked again and saw the car "almost" or "quite a ways" down the hill, but still distant "two or three times further than we was across the street," and "going quite a little speed" which she, however, declined to estimate. The plaintiff testified that when crossing Bowers street she saw the defendant when two or three times as far away as they were,—"way up Bowers street"; that he was coming "awful fast," but that she thought that they "had plenty of time to go across." The other occupant testified that before the Pelletier car arrived at the intersection she saw the defendant's car coming down the hill "very fast."

The defendant testified that he was proceeding down Bowers street at a speed from fifteen to eighteen miles per hour and that, as he approached the intersection, he slowed down to eight to ten miles; that he looked to his left and saw no car, then to the right, and (to use his language) "then when I looked straight ahead this car was right in front of me"; that the view to his left was so obstructed by the fence and the tree at the corner that he could not have seen the Pelletier car until he got within "somewhere between ten and fifteen feet" of the avenue. He conceded that had he looked when within that distance he could have seen the car, but testified that his view to the right was obstructed by a small house situate "twenty feet or so" westerly of the avenue, upon passing which he looked to his right, and, relying upon the law of the road applicable to highway intersections, did not again look to his left; that upon seeing the Pelletier car right in front of him he immediately applied his brakes, turned to the left in an effort to avoid a collision and stopped his car as soon as possible after the impact.

The defendant was an automobile mechanic and had had large experience in driving cars. In his travel to and from the garage where he was employed he had been accustomed to cross the intersection several times a day for the seven years immediately preceding the accident, and knew the intersection was "a bad corner."

1. P. L., c. 90, s. 3, provides, "If a person traveling on a highway with a vehicle approaches an intersecting way . . . he shall grant the right of way, at the point of intersection, to vehicles approaching

from his right; provided, that such vehicles are arriving at the point of intersection at approximately the same instant."

The court having defined the "point of intersection" as "the area included within the side lines of the streets extended, and in this case the area which would be in either street if the other were eliminated," instructed the jury as follows: "In view of the fact that the statute says that this rule is applied, provided the vehicles are approaching the point of intersection at approximately the same instant, it follows, as a matter of course, that if the vehicle on the left has entered into the point of intersection, then its right is as good and equal to that of the vehicle on the right. So that, under such a situation, the rule would be the ordinary rule of due care, one having no greater right than the other, and each being bound to exercise a reasonable degree of care toward the other travellers on the highway" "The idea that I was intending to convey was, . . . if the party on the left had entered into the point of intersection, that is, into that square, before the party on the right reached the point of intersection, they were not both reaching the point of intersection at approximately the same instant; then the party on the left would have as good a right, or rights equal to that of the one on the right, and the law of due care and reasonable conduct would apply, just the same as if there were no statute, because the statute only applies when they are reaching this point of intersection at approximately the same instant. If the driver on the left was already in the intersection before the one on the right got to it, the party on the left is not obliged to stop and withdraw and allow the other to proceed. The party on the left has the same rights in that situation as the other driver has, and each must exercise a reasonable degree of care toward each other and toward other travellers."

The charge gave the jury to understand that, if it were found that the vehicle on the left had entered the square formed by the side lines of the intersecting streets before the car to the right reached this area the statute had no application; for the reason, as the court put it, that in such case the vehicles "were not both reaching the point of intersection at approximately the same instant." This was error. The charge gave to the language of the statute a technical and restricted construction which would defeat its object. The evil sought to be remedied is here significant evidence of the legislative intention. *Haselton* v. *Stage Lines*, 82 N. H. 327, 330; *Mulhall* v. *Company*, 80 N. H. 194, 196 and cases cited. The purpose of the legislature was to prevent accidents by collision at street intersections.

The statute, under the construction given it, would tend to increase the danger of collision by inciting a race between approaching vehicles to win the superior right of way.

By the words "arriving at the point of intersection at approximately the same instant" is intended such approximate coincidence in time of arrival of the approaching vehicles at the intersection as would presage danger of a collision to the mind of a person of ordinary prudence placed in the position of the driver of the vehicle on the left if he should attempt to pass ahead of the one to the right. The statute imposes upon such driver the duty of determining as a man of ordinary prudence whether, under all the circumstances, his arrival at the intersection will sufficiently precede that of the car crossing his line of travel to warrant the reasonable belief that he can safely cross the intersecting street ahead of it. This involves an appraisal of the various factors which make for such danger. These include the location of the respective street lines, the relative distances therefrom of the approaching vehicles, their apparent speeds and the probable conduct of the other driver. The difficulties of such appraisal and of correlating these factors vary according as the views of the drivers are clear or obstructed, and the travel infrequent or congested. The projection of street lines at the intersection of ways, crossing at various angles and grades and imperfectly indicated on the ground, and the determination of the speed of an approaching car present problems which cannot be solved with a high degree of accuracy from the driver's seat in a moving vehicle. Mathematical calculation and ascertainment in terms of time or distance are manifestly impracticable. The legislature intended a practical rule. The party on the left is approaching the intersection "at approximately the same instant" with the party to his right whenever there is such relative proximity of the vehicles to the intersection that, upon appraisal of all the factors in the situation, it would appear to a man of ordinary prudence in his place that there is danger of a collision if he fails to yield the right of way.

The statute imposes upon the party approaching from the left the duty to grant the right of way "at the point of intersection." The word "point" is not here used in its limited mathematical sense, but as indicating the whole area common to both intersecting streets and every part of it within the driver's contemplated course of travel. A vehicle, having reached this area, continues to be "at the point of intersection" within the meaning of the statute until the danger of a collision reasonably to be apprehended is past. In other words,

the statutory mandate is not lifted when the car has come within the intersecting area. The driver's failure to correctly judge the distance of the opposing vehicle, or its speed, does not transform his subordinate right of way into an equal or a superior one. His delay in discovering the danger does not improve his right or lessen his obligation. His statutory duty to grant the right of way to the vehicle to the right subsists while the danger lasts. Upon discovery of his error after he has entered the intersection he is still under the statutory duty to yield the right of way to the vehicle at his right if a man of ordinary prudence in his place, exercising due care, would be in doubt as to the danger of a collision if he were to persist in his attempt to pass in front of the other car.

2. In support of his exception to the denial of his motion for a directed verdict the defendant contends that there was not only an absence of evidence of his fault, but that there was conclusive proof of the contributory negligence of the plaintiff. As to the latter, reliance is primarily placed upon the alleged breach of P. L., c. 90, s. 3 in failing to grant him the right of way.

Even if it were conceded that the plaintiff was responsible for the control of the Pelletier car, her contributory negligence (the burden of proving which was on the defendant, P. L., c. 328, s. 13) was not established by the mere proof that such car, while approaching from the left, was in collision at the intersection with the defendant's car approaching from her right. The statute does not give the party upon the right an absolute right of way. Nor does it fix an inflexible standard by which the rights of the parties to a collision at street intersections may be determined, as a matter of law, under all circumstances. It does not require the driver of a vehicle approaching an intersection to await the passage of every car which may be approaching from his right irrespective of its distance from the intersection, its speed and the probable conduct of its driver. It lays down a rule of conduct which in its very nature is relative to, and dependent upon, the factors making for danger. The statute imposes a duty upon the party approaching from the left to yield the right of way only if, in view of all factors affecting safety, there is a reasonable apprehension of danger of a collision if he should proceed to cross the intersection ahead of the opposing car. In making his observation of the factors making for such danger, and in reaching his conclusion whether he can pass in safety, he is bound to use the care of an ordinarily prudent man. It is not the exact or mathematical situation but the apparent situation, obvious to a man of

ordinary prudence reasonably observant, that must control his judgment and determine the right of precedence. It is only when, under all the circumstances the driver from the left, exercising due care, is in doubt as to his ability, proceeding at a reasonable and proper speed, to pass the intersection without danger of a collision that the statutory rule applies.

In short, the invocation of the statute raises an issue of fact in the first instance, namely, whether or not a man of reasonable prudence in the position of the person approaching from the less favored direction would reasonably have concluded that he could pass the intersection without danger of collision. If the finding on this issue is in the negative the rule applies, otherwise not. On the finding of the disputed fact the application or non-application of the statute, as the case may be, follows as a matter of law. But no question of law is presented solely on the evidence except as to its sufficiency to sustain the finding.

The verdict for the plaintiff implies either a finding that under the situation disclosed by the evidence the statute did not apply, or an absence of a finding that it did apply. The question of law here presented is whether the evidence compelled a finding that it applied.

Each party owed the other a statutory duty to "slow down" (P. L., c. 103, s. 10), and in traversing the intersection to proceed at a "reasonable and proper" speed; a speed exceeding ten miles per hour being *prima facie* excessive, *Ib. s.* 18. There was evidence that Pelletier complied with these requirements. Under the evidence here it cannot be said as a matter of law that it was unreasonable for the plaintiff to rely upon the defendant's observance of the maximum statutory limitation as to speed. The plaintiff's evidence tended to show that when the Pelletier car had arrived at the intersection the defendant's car was two or three times farther therefrom than the former was from the clearance of danger. It cannot be said as a matter of law that a man of ordinary prudence in the place of Pelletier, or the plaintiff, in the situation disclosed might not reasonably have believed that he could safely pass the intersection ahead of the defendant's car without interfering with the latter's progress at a reasonable and lawful speed. In other words, the evidence did not conclusively require a finding that the statute applied.

Whether the statute did or did not apply the defendant was not absolved from the duty to exercise care. He was required in any event to "slow down" and proceed at "a reasonable and proper" speed, having in mind the character of the crossing. The defendant

knew that he was approaching a "bad corner." He testified that he could not have seen the Pelletier car, if he had looked until he was within "somewhere between ten and fifteen feet" of the avenue. This situation called for greater vigilance and a corresponding limitation of speed on his part as he neared the line of travel of opposing vehicles. The evidence of his earlier high speed taken in conjunction with the proven force of the impact of his car upon the Pelletier car tended to show, and may have convinced the jury, that he was proceeding across the intersection at an unreasonable rate of speed. Whether, because of the blindness of the crossing of which the jury had a view, he should have looked to his left later than he did was likewise a question of fact for the jury. There was evidence supporting the finding of defendant's fault.

The motion for a directed verdict was properly denied.

The conclusions which we have reached accord for the most part with the reasoning of the courts of other jurisdictions in recent accident cases arising at highway intersections under like or similar statutes. Neumann v. Apter, 95 Conn. 695; Hall v. Root, 109 Conn. 33; Fournier v. Zinn, 257 Mass. 575; Payson v. Company, 262 Mass. 22; Lachance v. Myers, 98 Vt. 498; Dansky v. Kotimaki, 125 Me. 72; Fitts v. Marquis, 127 Me. 75; Grant v. Marshall, 32 Del. 239; Ward v. Clark, 232 N. Y. 195; Shuman v. Hall, 246 N. Y. 51.

By reason of the error in the instructions the order must be

*New trial.*

All concurred.