Hillsborough, }
June 2, 1936. }

PHILIP BELANGER *v.* EUGENE BERUBÉ.

CHARLES COTÉ *v.* SAME.

*Albert Terrien* (by brief and orally), for the plaintiffs.

*Devine & Tobin* (*Mr. Tobin* orally), for the defendant.

PAGE, J.   The accident that caused the plaintiffs' injuries occurred at the intersection of Main and Kinsley Streets in Nashua at about 11 o'clock of a misty Saturday evening in September, 1934.   The plaintiffs were passengers in the defendant's car, which was being operated by the defendant in a southerly direction along Main Street. A line of cars was proceeding northerly along the same street.   At the point of accident, Kinsley Street intersects Main Street from the west, but does not cross it.

One of the north-bound cars made a left-hand turn to enter Kinsley Street, and the defendant made a quick stop that threw the plaintiffs forward and caused their injuries.   Immediately after the defendant stopped, the two cars came into collision, but the collision does not appear to have had any share in causing the injuries complained of. There was some conflict in the testimony as to the length of time the defendant had in which to avoid collision.   If the plaintiffs' witnesses were to be believed, the defendant, if reasonably watchful, might have seen the turning of the other car in season to have come to a stop less quickly.   If the defendant were to be believed when he testified that the other car did not turn until within seven feet of his car, a sudden stop might have been found prudent.

(1) Subject to general exceptions by the defendant  the plaintiffs and another passenger in the defendant's car were permitted to testify that the defendant had made a quick stop at a red light at the intersection next north of the point of accident, and that the passengers had then been thrown forward; also that one of them at that time had remarked to the defendant that he would have somebody through the windshield if he did not look out.

The plaintiffs claim that this evidence was material as showing that the brakes were especially efficient and that the tendency of a quick application would be to throw the passengers forward, and that the defendant knew this.  We agree.  The efficiency of the brakes had already appeared independently in connection with other testimony that they had been relined recently.    Taken together, the evidence tended to establish one of the circumstances in the light of which the defendant was called upon to act.   If an application of the brakes shortly before had had certain results, the defendant might have anticipated similar results upon an attempt to stop suddenly.   If reasonable care, measured by these circumstances, required a closer lookout than was kept by the defendant, or less speed, and the use of such care would have enabled him to apply the brakes earlier and more gently, and thus to stop without harm, causal negligence could be found.

The defendant contends, however, that the jury would be likely to infer from the defendant's conduct at the red light what his conduct was at Kinsley Street. Such an inference might be warranted. *Dimock* v. *Lussier*, 86 N. H. 54, 59. But even if it were not, the testimony being admissible for some other purpose and the defendant having failed to safeguard his interests by asking for limiting instructions, he could take nothing by his exceptions. *Smith* v. *Railroad*, 87 N. H. 246, 254, and cases cited.

(2) The defendant excepted to the refusal of the court to instruct the jury as follows:

"If the driver of the northbound car intended to make a left turn into Kinsley Street, he was bound to yield the right of way to the defendant if both cars were approaching the intersection at approximately the same instant.

"The defendant had a right to assume that the driver of the northbound car would grant him the right of way if they were both approaching the intersection at approximately the same instant."

The instructions given were silent as to the question of the right of way. If the provisions of P. L., c. 90, s. 3 apply to the situation existing just prior to the accident, the instructions should have been given (*Burke* v. *Railroad*, 82 N. H. 350, 361), with suitable modifications defining more particularly the implications of the phrase "at approximately the same instant" (*Gendron* v. *Glidden*, 84 N. H. 162, 166), and limiting reliance by the defendant to the period during which a man of average prudence under all the existing circumstances would suppose that the other driver was going to obey the law (*Piateck* v. *Swindell*, 84 N. H. 402, 403; *Rouleau* v. *Blotner*, 84 N. H. 539, 540).

The statute provides that "if a person traveling on a highway with a vehicle approaches an intersecting way, . . . . he shall grant the right of way, at the point of intersection, to vehicles approaching from his right; provided, that such vehicles are arriving at the point of intersection at approximately the same instant." An "intersecting way" includes one like Kinsley Street, which joins Main Street at an angle, but does not cross it. P. L. c. 99, s. 1 (vi). The "point of intersection" includes "the whole area common to both intersecting streets and every part of it within the driver's contemplated course of travel." *Gendron* v. *Glidden, supra*, 166.

The collision of the two cars could be found, and perhaps must be found, to have taken place in the southwesterly quarter of the intersection as thus defined. The contemplated course of travel of the

defendant was southerly. That of the other driver was on a curve bearing west of north and taking him necessarily across the south-bound course of the defendant; so it must bring the turning driver to a position where the defendant's vehicle would be "approaching from his right." If the collision took place in the portion of the intersection already suggested, it would be a natural inference that when the north-bound driver approached the intersection, the defendant's car was about to enter the intersection, or was already occupying it. Under those circumstances, the entrance by the north-bound driver with the purpose of making a left-hand turn "would presage danger of a collision to the mind of a person of ordinary prudence placed in the position of" such driver. (*Gendron* v. *Glidden, supra,* 166). Such facts would lay upon the turning driver the duty of yielding to the defendant. And the defendant would have had the right to proceed until such time as by the exercise of ordinary prudence, he should have perceived that the turning driver did not intend to obey the law of the road.

The construction of similar statutes in other states has made them applicable to one making a left turn at an intersection. *Boyd* v. *Close,* 82 Colo. 150; *Neumann* v. *Apter,* 95 Conn. 695; *Barry* v. *Leiss,* 109 Conn. 484; *McCarthy* v. *Beckwith,* 246 Mass. 409; *Rounds* v. *Fitzgerald,* 207 App. Div. 534; *Frint* v. *Amato,* 131 Ore. 631; *Kuneck* v. *Conti,* 277 Pa. St. 455; *Finlay* v. *Plante,* 52 R. I. 325; *Denney* v. *Power,* 159 Wash. 465. Even in the absence of statute, it has been held that in the case of two vehicles approaching an intersection from opposite directions, the one continuing a straight course has the right of way over the one making a left turn. *Fernald* v. *French,* 121 Me. 4, 6.

The defendant was entitled to the benefit of a proper instruction in this regard. His exception is sustained.

(3) Since there must be a new trial, it is unnecessary to pass upon the question whether either verdict is excessive. At another trial, the state of the evidence upon the issue of the causal connection between the accident and the plaintiff Belanger's astigmatism may be so altered that an opinion upon the record before us would serve no useful purpose.

*New trial.*

All concurred.