No. 35,694

VIRGIL E. FISHER, *Appellee,* v. THE WICHITA TRANSPORTATION CORPORATION, *Appellant.*

(134 P. 2d 393)

Opinion filed March 6, 1943.

*George B. Powers* and *John F. Eberhardt,* both of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, Samuel E. Bartlett, Lester L. Morris, Carl T. Smith* and *C. H. Morris,* all of Wichita, were on the briefs for the appellant.

*Clarence R. Sowers,* of Wichita, argued the cause, and *Claude E. Sowers,* of Wichita, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages for injuries sustained in a collision of motor vehicles at an intersection of city streets in Wichita.

Arkansas avenue in Wichita runs north and south. It is thirty feet wide. Twenty-third street runs east and west and crosses Arkansas avenue at right angles.

On the forenoon of May 16, 1941, the defendant's south-bound passenger bus stopped to admit a passenger at the west curb of Arkansas avenue, immediately north of its intersection with twenty-third street. The bus then started and commenced to make a left turn, its route from that point being eastward on Twenty-third street. At the time the bus commenced to make that turn, the plaintiff in his automobile some distance to the south was traveling northward. Before the bus had completed its left-hand turn, plaintiff's car collided with it and he was injured.

Hence this lawsuit for damages. Plaintiff alleged that the defendant bus company was negligent in making its left turn when plaintiff's car was approaching so closely as to constitute an immediate hazard within the pertinent terms of a city ordinance quoted in plaintiff's petition. Plaintiff also alleged that defendant was negligent in not having due regard for the rights of plaintiff who was lawfully using the highway immediately prior to and at the time of the collision, and in making a left-hand turn in front of the plaintiff when the latter was so close that defendant knew or should

have known that plaintiff would be unable to stop his automobile in time to avoid the collision.

Defendant answered with a general denial, and alleged that the collision and resulting damages were caused by plaintiff's own reckless and careless conduct, and that such conduct of plaintiff was the sole, proximate and contributing cause of the collision and resulting injuries suffered by him.

The answer also stated defendant's version of the accident and alleged that when its bus driver started to make the left-hand turn there was no other automobile within or close to the intersection; that the plaintiff was a considerable distance south of the intersection when the bus was making its turn to the east, and plaintiff had plenty of time to stop his car and avoid the collision; and—

"That instead of stopping said vehicle, said plaintiff herein increased the speed of his vehicle and attempted to swing to the east in front of said bus, the front of which was then near the east curb of Arkansas avenue. That said driver of said bus applied his brakes and stopped, and that the driver of said automobile in an attempt to swerve around the front of said bus struck said bus and careened into a telephone post at the northeast corner of said intersection, causing the damage to the car and injury to himself." ,

Defendant's answer charged plaintiff with negligence in various particulars, including violation of the terms of the city traffic ordinance and failing to yield the right of way at the intersection; failing to keep a lookout for others lawfully using the highway, particularly the defendant, and in driving his automobile into the defendant's bus; failing to stop, slow up or swerve his car so as to avoid striking the bus, and attempting to pass the bus when he saw it in the intersection; failing to stop his car when he saw the bus in a position of danger from which it could not extricate itself so as to avoid the collision and damage. Defendant also alleged that any one or more of the above pleaded acts of negligence on the part of plaintiff were the sole and proximate cause of the resulting collision.

The pertinent provision of the city ordinance pleaded by both plaintiff and defendant reads:

"SECTION 42. *Vehicle Turning Left at Intersection.* The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn."

Other provisions of the ordinance were quoted in the pleadings but may need no attention now.

The cause was tried before a jury. Defendant's demurrer to plaintiff's evidence was overruled. Its evidence was then introduced, and plaintiff's rebuttal testimony followed.

The jury returned a general verdict for plaintiff and answered special questions thus:

"1. What was the speed of plaintiff's automobile, (a) as it entered the intersection? A. 21 miles per hour. (b) at the time of the collision? A. 20 miles per hour.

"2. Was the defendant's bus stopped at the time of the collision? A. Yes.

. . . . . . . . . , . . . . . .

"4. What was the average speed of the bus in the intersection? A. 3 miles per hour.

"5. Where was the plaintiff with reference to the south curb line of 23rd street when the bus started its left turn? A. 150 feet.

"6. When the plaintiff observed the bus turning, what, if anything, did he do to avoid the collision? A. Nothing.

"7. After the plaintiff observed the bus making the left turn, what, if anything, prevented him from (a) turning to the right on the south half of 23rd Street? A. Nothing. (b) Stopping? A. Nothing.

"8. Of what, if any, negligence was the plaintiff guilty? A. None.

"9. Of what, if any, negligence was the defendant guilty? A. Failure to yield right of way.

"10. Was the plaintiff's automobile so close to the intersection as to constitute an immediate hazard when the bus was in the intersection intending to make a left turn? A. Yes."

Defendant filed a motion to strike special findings Nos. 8 and 10. This was overruled. It then moved for judgment on the special findings notwithstanding the general verdict. That motion was overruled, and so, too, was its motion for a new trial. Judgment was entered on the general verdict and defendant appeals.

The principal error assigned centers about the overruling of defendant's motion to strike the answers to special questions Nos. 8 and 10, and its motion for judgment on the special questions.

Touching the motion to strike, it will be noted that the jury specifically found that when plaintiff saw the bus turning he did nothing to avoid the collision. (Finding No. 6.) The jury also specifically found that after plaintiff saw the bus making the left turn, there was nothing that prevented him from turning to the right on the south half of Twenty-third street, and nothing that prevented him from stopping. (Finding No. 7, a and b.) How then can the jury's finding No. 8 be justified? It is elementary law that one in a

position to minimize or avert damage to himself or to his property must exert himself to do so, irrespective of any negligence of which his adversary may be guilty. (*Atkinson v. Kirkpatrick*, 90 Kan. 515, 519, 135 Pac. 579; *Fritz v. Western Light and Power Corp.*, 140 Kan. 250, 36 P. 2d 90 and citations.) Since the jury in its detailed findings Nos. 6 and 7 found that plaintiff did nothing to avoid the collision and that nothing prevented him from turning to the right on the south half of Twenty-third street, and that nothing prevented him from stopping, when manifestly either of these simple acts would have prevented the collision, the jury's conclusion in finding No. 8 that plaintiff was not guilty of negligence was inconsistent with its specific findings Nos. 6 and 7, and should have been set aside. In *Railway Co. v. Laughlin*, 74 Kan. 567, 87 Pac. 749, it was held:

"When a jury in answer to special questions make certain general findings which are in the nature of conclusions, and which are contradicted by other special findings of fact in detail, the general findings will be controlled by the special findings." (Syl. ¶ 1.)

In *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107, where a jury found special facts in detail which established plaintiff's contributory negligence as a matter of law, and another special finding of the jury that he was not guilty of contributory negligence, the trial court set the latter finding aside. In affirming the judgment we said:

"Plaintiff points to finding 9 that he was not guilty of contributory negligence. This finding was a general one, expressing the jury's conclusion from facts found in detail which established contributory negligence as a matter of law. In such cases the general finding may be ignored, and judgment may be entered in accordance with the specific findings. (Citations)." (p. 134.)

See, also, *Eldredge v. Sargent*, 150 Kan. 824, 832, 833, 96 P. 2d 870.

Next let us notice the jury's finding No. 5. It specifically found that plaintiff was 150 feet from the south curb line of Twenty-third street when the bus started its left turn. Yet notwithstanding that specific finding of fact the jury in its finding No. 10 said that plaintiff's automobile was so close to the intersection as to constitute an immediate hazard when the bus was in the intersection making its left turn. These two findings, Nos. 5 and 10, give us a clear understanding of what the jury regarded as an immediate hazard. We think that when the actual distance of plaintiff's car south of the intersection was ascertained, it became a very simple question of

law whether it was an immediate hazard for the bus to commence making its left turn when plaintiff's car was 150 feet south of Twenty-third street. Consequently defendant's motion to strike the jury's finding No. 10 should have been sustained.

Coming now to the main question, Was it an immediate hazard for the bus to start making the left turn if and when plaintiff's car was coming north at a reasonable rate of speed at a point 150 feet south of the intersection?

The city ordinance imposed regulations which were equally binding on plaintiff and defendant. It was not drawn nor intended to give one an unfair advantage over the other. Quite the contrary. If a driver and his vehicle coming from the opposite direction is *within* an intersection or *so close* to it as to constitute an immediate hazard, the driver of another vehicle *intending to turn to the left* must yield the right of way. But this right of precedence is reciprocal. If the driver of a motor vehicle coming from the opposite direction is not so close to the intersection as to create an immediate hazard, the driver intending to make a left turn on giving a signal is entitled to precedence, and "the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn."

In the analogous case of *Rouleau v. Blotner*, 84 N. H. 539, 152 Atl. 916, the defendant's truck which had come from the north started to make a left turn at a street intersection. It was moving at five miles an hour. Plaintiff in his automobile was coming towards the intersection from the opposite direction. Plaintiff's car was 150 feet south when defendant's truck was making the turn. A collision followed, and plaintiff recovered damages, but the verdict was set aside on appeal and judgment directed for defendant. In the opinion it was said:

"The only other claim of fault is the general ground that it was careless to attempt to make the turn when and as the defendant's servant did. Traffic has the right to move in a reasonable way; and a driver may rely upon the proposition that other drivers will use due care, unless there be something to inform him that such is not the fact. . . . The large truck was an object which could not escape the observation of any oncoming careful driver. The plaintiffs' car was at least a hundred and fifty feet distant when its driver would see the truck turning across his path, if he looked. The intervening distance was sufficient several times over for him to stop. Moreover, he did not need to stop. If he had slowed down he could have passed to the rear of the truck while still going at a moderate rate of speed for a thickly settled village street." (p. 540.)

We agree with this decision of the New Hampshire court. It did not create an immediate hazard for the driver of defendant's bus to make a left turn when plaintiff coming from the opposite direction was 150 feet south of the intersection as the bus commenced to make its turn.

In an effort to uphold the judgment plaintiff cites and quotes testimony. But we accept the detailed findings of fact as made by the jury (as indeed we are bound to do). And those detailed findings must prevail under the authorities cited above. Those detailed findings, particularly Nos. 5, 6 and 7, convict the plaintiff of contributory negligence which would bar a recovery even if defendant had also been negligent, which does not appear—in view of the right of precedence given it by the city ordinance when no immediate hazard impended as it started to make the left turn. (*Sayeg v. Kansas Gas & Electric Co.*, ante, p. 65, 131 P. 2d 648.)

The judgment is reversed with instructions to enter judgment for defendant.