## AUTREY v. SWISHER.

### SAME v. MAXWELL.

#### No. 11506.

Circuit Court of Appeals, Fifth Circuit.

April 16, 1946.

Olin E. Watts and Ralph M. Ketcham, both of Jacksonville, Fla., for appellant.

E. T. McIlvaine, of Jacksonville, Fla., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

These suits were brought by appellees Herbert Swisher and Gordon Maxwell against the Hamilton Turpentine Company in the Circuit Court, Duval County, Florida, to recover for personal and property damages resulting from a collision between an automobile owned and driven by Herbert Swisher in which Walter Maxwell was a guest passenger and a truck owned by and operated for the appellant, W. G. Autrey. By stipulation and consent order W. G. Autrey was substituted as defendant in each case. The cases were then removed to the United States District Court on the ground of diversity of citizenship.

The two complaints alleged that the negligence of the truck driver caused personal injuries to Swisher and to Maxwell.

Swisher also claimed property damage to his car. The answers in both cases denied the negligence of the truck driver. In the Swisher case the answer pleaded contributory negligence; in the Maxwell case the answer alleged that the sole cause of the collision was the negligence of Swisher. Autrey in his answer counterclaimed for damages to his truck and damages for the loss of its use. The two cases were consolidated for trial and tried to the court without a jury.

The facts and circumstances were as follows: On March 21, 1945, at about 10:30 a. m., Herbert Swisher, driving on U. S. Highway No. 41 in a northerly direction, came through the town of Jennings, Florida, from the south. W. G. Autrey's truck, which was a semi-trailer type, ten-wheel vehicle, was at that time proceeding on the highway from the north in a southerly direction toward the town. The driver of the truck was on his way to W. G. Autrey's premises which were located a short distance off the highway on an unimproved road leading east from the highway. The truck driver testified that on reaching the junction of the unimproved road and the highway he stopped the truck, and, observing the Swisher car about a quarter of a mile distant, he signaled with his hand and then turned left to cross the highway onto the unimproved road.

Swisher admitted that although he observed the truck when it was a quarter to a half mile away, he looked away from the direction for a period of five to ten seconds, and during that interval the truck started its turn across the highway. He did not observe that the truck had started to turn until he was 300 feet from it, and at that moment the truck was already more than half way across the highway.

The testimony on the maximum speed of Swisher before the collision is in serious conflict. One bystander estimated that Swisher was traveling at the rate of 85 to 90 miles per hour. Swisher testified that his speed just before the collision was between 50 and 55 miles per hour. After skidding 111 feet with four-wheel brakes locked, Swisher's car struck Autrey's truck with such force that it knocked the truck, with a heavy load, sidewise five or six feet and jolted sacks of feed off the truck. The weather was clear; the pavement of the highway was dry; and the four-wheel brakes and tires of the Swisher car were in excellent condition. The road

was straight and level, and there was nothing to obstruct the view. Damages to the car were $824, and those to the truck were $559.

The District Court found that at the place of the collision there was no business or residential district; that Swisher was driving approximately 60 miles per hour; that the applicable speed limit under the Florida law was 60 miles per hour; that the road into which the truck driver turned was an obscure country road and Swisher had no reason to anticipate the turn until the truck actually started turning; that the Swisher car was a quarter of a mile away; that even if the speed of the Swisher car had been such as to constitute Swisher negligent, the speed would be only the negligent creation of a condition and not the proximate cause of the collision; that the negligence of the truck driver was the sole proximate cause of the collision.

The court rendered judgments based upon these findings in favor of Swisher for $3500 and in favor of Maxwell for $1100. From both judgments W. G. Autrey appealed.

Section 317.41 of Florida Statutes Annotated governs the relative rights in the case of a vehicle turning left at an intersection. It reads: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to a vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard; but said driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn."

Section 317.01(8) of the Florida Statutes Annotated defines the word "intersection" as follows: "(8) Intersection. The area embraced within the prolongation or connection of the lateral curb lines; or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles; or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

The word "highway" as used in this statute is defined in Section 317.01(22) as follows: "(22) Street or highway. The entire width between the boundary of every way or place of whatever nature when any part thereof is open to the use of the public for purposes of vehicular traffic."

The District Court thought that Section 317.41 of the Florida Statutes Annotated was not applicable. The District Court said: "And the driver of the truck wanted to turn off on a very obscure little country road which the plaintiff had no reason in the world to anticipate he would do, until he actually started turning across the road. That may be a public road, but the photographs all showed it to be a little obscure dirt road leading off to a turpentine still, and we are all familiar with that type of road."

■ The fact that the unimproved road was a "little dirt road" would not render inapplicable section 317.41 of the Florida Statutes Annotated or prevent W. G. Autrey's truck from being "within an intersection" if the "little dirt road" was a public road. Section 317.01(8) defines "intersection" in terms of "highways." Section 317.01(22) defines "highway" as "every way * * * of whatever nature when any part thereof is open to the use of the public for purposes of vehicular traffic."

The applicability of Section 317.41 to this case depends only on the objective fact whether the side road "is open to the use of the public for purposes of vehicular traffic." The obscurity of the side road and the reasonableness of Swisher's failure to anticipate that the truck driver would turn are not determinative of the applicability of the aforesaid section.

Autrey testified that he owned property adjacent to the side road in question and that he knew it was a public road since it was maintained by the county. In the record no evidence disputes this testimony. Since the fact as to whether the side road was "open to the use of the public" may have a bearing on this case, we think the parties upon a new trial should have an opportunity to introduce further evidence on this point.

■ If, in fact, this was an "intersection," we believe that Section 317.41 clearly gave the truck driver the right-of-way to make his turn to the left as soon as he reached the intersection before the Swisher car reached it. Unless Swisher's car were so close as to constitute an "immediate hazard," the truck driver would have the right-of-way.

No Florida case, we have found, construes this section of the statutes. Similarly worded statutes have been construed to mean that, when a motorist about to make a left turn sees another car approaching the intersection at such a distance and apparent speed that a man of ordinary prudence would believe that the approaching car would not reach the intersection until an appreciable interval of time after the turning car has entered the intersection, he may proceed to make his turn. If, on the contrary, a man of ordinary prudence would believe that the two cars would reach the intersection at approximately the same instant, he must wait for the passage of the approaching car. Brown v. Clancy, D.C.Mun.App.1945, 43 A.2d 296; Fisher v. Wichita Transportation Corporation, 1945, 156 Kan. 500, 134 P.2d 393; Rouleau v. Blotner, 1931, 84 N.H. 539, 152 A. 916; Washam v. Peerless Automatic Staple Machine Co., 1941, 45 Cal.App.2d 174, 113 P. 2d 724; Wilkinson v. Marcellus, 1942, 51 Cal.App.2d 630, 125 P.2d 584. Fisher v. Wichita Transportation Corporation, supra, applied the holding of Rouleau v. Blotner, supra, to facts similar to the instant case. The court in Rouleau v. Blotner, supra, said:

"The only other claim of fault is the general ground that it was careless to attempt to make the turn when and as defendant's servant did. Traffic has the right to move in a reasonable way; and a driver may rely upon the proposition that other drivers will use due care, unless there be something to inform him that such is not the fact. Gendron v. Glidden, 84 N. H. 162, 148 A. 461. The large truck was an object which could not escape the observation of any on-coming careful driver. The plaintiffs' car was at least a hundred and fifty feet distant when its driver would see the truck turning across his path, if he looked. The intervening distance was sufficient several times over for him to stop. Moreover, he did not need to stop. If he had slowed down he could have passed to the rear of the truck while still going at a moderate rate of speed for a thickly settled village street. No rule of law required the defendant's servant to anticipate that the plaintiffs' driver would confine his observation to the space twenty feet in front of his car while driving from twenty to thirty-five miles an hour. The situation as the defendant's servant saw and judged it justified him in making the turn, and he could not be found to be in fault in so doing."

In the instant case Swisher's car was at such a distance and apparent speed that the truck driver as a man of ordinary prudence would believe that Swisher's car would not reach the intersection until an appreciable interval of time after the truck had entered the intersection. Swisher testified that when he first saw the truck he was passing a white gasoline station and that at that moment he was going 25 to 40 miles an hour. That filling station was one quarter of a mile distant from the side road. The truck driver, as a reasonable man, could believe that an approaching automobile at the speed of 40 miles an hour and at a distance of a quarter of a mile would not constitute "an immediate hazard." Even though the truck driver may not have been able to judge the actual speed of Swisher's automobile at a distance of a quarter of a mile, the truck driver could act on the assumption that Swisher was not traveling at a speed greater than 25 miles per hour. Section 317.22 of the Florida Statutes Annotated provides that the speed limit of any vehicle in any "business or residence district" is 25 miles per hour. The location of the white gasoline station was in a "business or residence district," and the truck driver could reasonably assume that Swisher was driving within the legal rate of speed.[1]

If Section 317.41 of the Florida Statutes Annotated was applicable it gave the truck driver the right-of-way to make a left turn, and the failure of Swisher to yield the right-of-way to the truck driver was negligence, and this negligence was the proximate cause of the collision. Under the same circumstances, the driver of the truck was not negligent.

According to Swisher his speed on applying his brakes before the collision was between 50 and 55 miles per hour; according to a disinterested witness his speed was 85 to 90 miles per hour. The trial Judge evidently thought Swisher's estimate too low and that of the disinterested witness too high, for he found that Swisher was traveling around 60 miles per hour. The record does not disclose upon what

[1] A speed of 25 to 40 miles per hour at the time Swisher passed the white gasoline station is not inconsistent with the District Court's finding that Swisher traveled at 60 miles per hour in the open country before the collision.

fact or factor the trial judge relied in fixing 60 miles per hour as the speed at which Swisher's car was moving.

The Swisher car skidded 111 feet with four-wheel brakes locked, knocked a heavy truck and its load of feed sidewise five or six feet, and severely damaged both vehicles. The weather was clear; the pavement of the highway was dry; and the brakes and tires of Swisher's car were in excellent condition. Witnesses testified: that the squeal of the tires on the pavement was very loud; that the rubber got so hot that it smoked; that the tires were too hot to touch some fifteen to twenty minutes after the collision; and that the skid marks were visible on the pavement six months after the accident. These physical facts indicate that the car was traveling at a relatively high speed when the impact took place after it had skidded 111 feet with all four-wheel brakes locked. A car running 50 miles an hour may be stopped in 111 feet; 60 miles an hour, in 160 feet.[2] It is obvious, therefore, that the Swisher car was traveling at a greater speed than 60 miles an hour when the brakes were applied. Swisher's testimony leads to the same conclusion. According to his testimony, he first saw the truck when he was a quarter of a mile away; he looked elsewhere during an interval of perhaps as much as ten seconds; when he saw the truck again, he was 300 feet away. Hence, during the ten-second interval he must have traveled 1020 feet. When he first saw the truck, he was traveling 40 miles an hour. Traveling at the rate of 60 miles an hour during the ten seconds, he would have covered 880 feet. Had his speed over the 1020 feet been uniform during the ten seconds, he would have traveled 102 feet per second. A person traveling at 102 feet per second is traveling at the rate of 69.6 miles per hour. If, at the beginning of the ten seconds, he was traveling 40 miles an hour, and during the ten seconds traveled 1020 feet, his speed necessarily at the end of ten seconds was in excess of 69.6 miles per hour, for it took him at least one to two seconds to increase his speed to the point where 1020 feet could be covered in a ten-second period of time. This testimony, therefore, together with the physical facts, clearly indicates that he was traveling in excess of 60 miles per hour. At such speed, to take his eyes away from the road with knowledge of an approaching car was negligence.

We think that the facts in this record as presently made up lead to these inescapable conclusions: (1) that the truck was turning in an intersection and under conditions which gave it the right-of-way; (2) that the Swisher car was traveling at an illegal rate of speed; (3) that Swisher was negligent in traveling at an illegal rate of speed and in looking away from the highway for an interval of perhaps ten seconds or more while traveling at such a speed; and (4) that Swisher's negligence was the proximate cause of the collision.

For the reasons assigned, the judgments from which appellant appealed are reversed, and the causes are remanded with instruction to grant a general new trial.

Reversed and remanded.

---

[2] See table issued by Traffic Engineering & Safety Dept., American Automobile Association, Washington, D. C., June 19, 1944, entitled "Braking and Total Stopping Time for Various Speeds and Braking Efficiencies."