Rockingham
No. 6672

THOMAS W. ECKHART v. EARLE B. LINABERRY

WILLIAM ECKHART v. SAME

November 30, 1973

<>

*Boynton, Waldron, Dill & Aeschliman (Mr. Nicholas Aeschliman* orally) for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross (Mr. Gross* orally) for the defendant.

GRIMES, J. These actions to recover damages for personal injury to Thomas W. Eckhart, a minor, and consequential damages to his father arose out of an intersection accident which occurred on November 25, 1966, at about 1 p.m. while Thomas was making a left turn across the path of the defendant. The issues involve the questions whether Thomas was at fault as a matter of law and whether the exclusion of certain evidence offered by the defendant was proper.

After a trial by jury resulting in verdicts for the plaintiffs, all questions of law raised by defendant's exceptions were transferred by *Morris, J.*

Thomas Eckhart had gone on an errand with his father's Saab and was returning home via Route 101 in a westerly direction. He had picked up two hitchhikers, Miltner and Blalock, and stopped at the intersection of Route 151 to let them out before turning left or south on Route 151 which crosses Route 101. Thomas testified that because of his injuries, he had no recollection of the accident or events leading up to it.

The defendant was travelling in an easterly direction on Route 101 through a zone with a posted speed of 35 miles per hour and approaching the intersection over which there was a flashing yellow light. Defendant testified that as he approached the intersection with which he was thoroughly familiar, he slowed down from 50 miles per hour and that his attention was directed to two cars stopped at a stop sign

to his left on Route 151. He said that "this other vehicle (plaintiff's car) came across in front of" him, and that he put on his brakes full force. His recollection was that one of the two cars at the stop sign on Route 151 had turned west on Route 101 and had passed him on his left. He testified that he never saw the Eckhart car until it was turning in front of him and did not know where it came from. He said that he was going about 40 miles per hour at the time of impact. The cars collided at an angle, right front to right front, in the eastbound lane of Route 101.

Plaintiff's expert testified that using a combination of factors including the length of skid marks, damage analysis, and the continued movement of defendant's vehicle after impact, it was his opinion that defendant was going between 55 and 60 miles per hour before he decided to apply his brakes which it was his opinion occurred 117 feet from the point of impact. The latter opinion was based on skid marks, distance travelled while braking without wheel lock, and during reaction time of ¾ second at 55 miles per hour or 60 feet.

The only evidence relating to the path of the Eckhart car came from the hitchhiker Blalock, who testified that it proceeded in a curved path, "a slight arc", from the eastbound lane of Route 101 near the northeasterly corner of the intersection where he had been let out. He also testified that he saw the defendant's car before he heard the screech of brakes and it was going "very fast".

Defendant's contentions that Thomas was at fault as a matter of law are based upon the so-called left turn statute, RSA 262-A:28, and the failure to keep a proper lookout for oncoming traffic. RSA 262-A:28 reads in material part as follows: "The driver of a vehicle intending to turn to the left within an intersection . . . shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

This statute became effective September 1, 1963. Prior to that time, left turns at intersections were governed by a statute requiring the party on the left to yield the right of way to a person on the right if they were "arriving at

the point of intersection at approximately the same instant". RSA 250:3; *Belanger v. Berube,* 88 N.H. 191, 185 A. 898 (1936). The old statute despite its language was construed to place the burden on the person on the left, not on the basis of who arrived at the intersection first, but when the ordinary person of average prudence placed in the position of the person on the left would think there was a danger of collision if he should attempt to cross the intersection ahead of the other car. *Gendron v. Glidden,* 84 N.H. 162, 148 A. 461 (1929); *Rouleau v. Blotner,* 84 N.H. 539, 152 A. 916 (1931).

Defendant contends that RSA 262-A:28 establishes a more rigid rule and that whether or not the oncoming vehicle is so close to the intersection as to constitute an immediate danger is judged objectively from the actual situation and not from the standpoint of what the reasonable person would conclude. It is argued that, all other factors remaining constant, the mere fact of collision within the intersection establishes fault on the part of the person turning left. The person turning left, it is urged, could avoid this conclusion only by showing that some factor did not remain constant. For example, by showing that his car stalled or hesitated or that the oncoming vehicle speeded up. He would not, however, be able to escape the conclusion that he violated the statute on the basis that a reasonable person in his position would have thought that the oncoming vehicle did not constitute an immediate hazard.

Plaintiffs on the other hand contend that it is still the apparent situation seen through the eyes of the reasonable man and not the actual situation that governs. RSA 262-A:27, 29, and 30 all became effective on the same date as section 28. The scheme of the new statute imposes the duty to yield the right of way in various situations dependent upon the position of the other vehicle. Section 28 with which we are concerned requires left turning vehicles to yield to one coming in the opposite direction which is either "within the intersection or so close thereto as to constitute an immediate hazard". The word "immediate" must be presumed to have some meaning and would indicate that the legislature intended that the hazard not be remote. Distinguishing between an immediate hazard and one not immediate would

seem to allow for the exercise of some judgment on the part of the left turning driver and militates against fault being presumed from the mere fact of a collision. *Gendron v. Glidden,* 84 N.H. at 167, 148 A. at 465. Section 29, subsection II, dealing with stop signs, imposes the duty to yield after a stop to "any vehicle which has entered the intersection from another highway or which is approaching so closely . . . as to constitute an immediate hazard . . . . " Subsection III dealing with yield signs imposes the duty to yield "to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard . . . . " Section 29 III although using the words "so closely as to constitute an immediate hazard" has the following proviso: "Provided however that if such a driver is involved in a collision with a vehicle in the intersection after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield the right of way". This proviso, which appears only in subsection III, would permit but not compel a finding of a violation of the statute from the mere fact of a collision. *State v. Lapointe,* 81 N.H. 227, 123 A. 692 (1924); *State v. Langley,* 92 N.H. 136, 26 A.2d 368 (1942).

This is something less than defendant contends for section 28 which has no such proviso because he contends that a collision *requires* a finding of a violation unless the party on the left proves that the factors did not remain constant. The existence of the proviso in section 29 III and its omission in both section 29 II and section 28 indicates an intention that not even the prima facie provision should apply to them. We conclude, therefore, that the language "so close thereto as to constitute an immediate hazard" means so close that the ordinary man of average prudence placed in the position of the left turning driver would conclude that there was a danger of a collision if he were to make the left turn across the path of the oncoming car. *Gendron v. Glidden,* 84 N.H. 162, 148 A. 461 (1929); *Rouleau v. Blotner,* 84 N.H. 539, 152 A. 916 (1931).

The words "so close thereto as to constitute an immediate hazard" are found in the Uniform Motor Vehicle Code § 11:402 and the above interpretation is consistent with decisions in other jurisdictions as illustrated by such cases as

*Autrey v. Swisher,* 155 F.2d 18 (5th Cir. 1946); *Fisher v. Wichita Transp. Corp.,* 156 Kan. 500, 134 P.2d 393 (1943); *Anthony v. Jennings,* 368 S.W.2d 533 (Mo. 1963). The *Swisher* and *Fisher* cases both cite *Gendron v. Glidden* and *Rouleau v. Blotner.* Thus construed, a finding of a violation was not compelled on the evidence in this case. The burden of proof on this issue was on the defendant and the evidence must be construed most favorably to the plaintiff. The jury could find from the evidence that plaintiff's average speed over the 60 feet of his turn was about 4 miles per hour. At 4 miles per hour or 6 feet per second, plaintiff would require 10 seconds to cover the 60 feet. The jury could also find that at the time plaintiff started his turn, defendant was some 800 feet away from the point of impact. They could also have found that the ordinary person in plaintiff's position would not anticipate that defendant would be traveling 55 miles per hour in a 35 mile per hour zone, while approaching an intersection with a flashing yellow light requiring him to proceed with caution (RSA 262-A:11) and could reasonably think there was no danger of a collision if he were to attempt to turn left. *Fitzpatrick v. Parsons,* 90 N.H. 458, 10 A.2d 660 (1940); *MacKelvie v. Rice,* 92 N.H. 465, 32 A.2d 818 (1943); *Autrey v. Swisher supra; Rouleau v. Blotner,* 84 N.H. 539, 152 A. 916 (1931). A finding that plaintiff violated RSA 262-A:28 was not compelled.

The same considerations require that defendant's claim that the evidence compelled a finding that plaintiff failed to keep a proper lookout be rejected. Defendant's claim is based upon the rationale of such cases as *Brown v. Mailhot,* 89 N.H. 240, 196 A. 764 (1938); *LaFountaine v. Moore,* 90 N.H. 258, 6 A.2d 751 (1939); *Murphy v. Granz,* 91 N.H. 244, 17 A.2d 449 (1941); and *Bukowski v. Buffum,* 103 N.H. 544, 176 A.2d 330 (1961). The basis of the holdings in those cases was either that the person failed to see what was obviously there when he looked or, where direct evidence as to whether he looked was lacking, only three possibilities existed: (1) he did not look, (2) he looked but not carefully, or (3) he looked carefully but failed to act carefully. The doctrine of those cases does not apply to the case before us, however, because the evidence supports findings which

are consistent with due care on the part of the plaintiff. The denial of defendant's motions for nonsuits and directed verdicts was proper.

Defendant also contends that it was error to exclude a police report of a prior statement claimed to have been made by the hitchhiker Blalock as to the spot where he alighted from the plaintiff's vehicle. At trial, he testified he was standing "right on the corner" when he made his observations and had not moved more than "a couple of feet at most" from where he was left by plaintiff. The police report contained a statement that Eckhart stopped to let the hitchhiker out 200 feet from the accident but the only indication in the report as to the source of the statement were the initials "T.M." and "J.B." and the police officer did not testify who made the statement. If the statement had been made by Blalock, it would, of course, have been admissible as a prior inconsistent statement to affect credibility. *State v. Chickering,* 97 N.H. 368, 89 A.2d 206 (1952). If it was made by the other hitchhiker, Miltner, it was, of course, not admissible. Although Blalock testified he talked to the officer, he did not acknowledge that he made the statement in question. Since the statement could not be attributed to Blalock, it was not error to exclude it.

*Exceptions overruled; judgment on the verdicts.*

All concurred.