Hillsborough-northern judicial district
No. 98-080

KARL F. KEELER & a.

v.

RALPH BANKS

December 27, 2000

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Daniel E. Will* on the brief, and *Mr. Dunn* orally), for the plaintiffs.

*Bouchard & Mallory, P.A.*, of Hampton (*Kenneth G. Bouchard* and *Robert D. Lietz* on the brief, and *Mr. Lietz* orally), for the defendant.

BROCK, C.J. The plaintiffs, Karl F. and Sharon Keeler, appeal the Superior Court's (*Barry*, J.) denial of their motion to set aside a jury verdict for the defendant. We affirm.

On July 20, 1995, Karl Keeler was driving his motorcycle and his wife, Sharon, was a passenger. The plaintiffs turned onto Route 27 and headed toward an intersection where Routes 27 and 43 intersect. At the intersection, drivers on Route 43 encounter a hanging, blinking red light and north and southbound stop signs. Drivers on Route 27 encounter a blinking yellow light. As the plaintiffs approached the intersection from Route 27, Karl observed a pick-up truck driven by the defendant enter the intersection from Route 43. Karl was unable to stop the motorcycle, and collided with the pick-up in the middle of the intersection. Both plaintiffs were injured.

The plaintiffs' theory at trial was that the defendant's violation of RSA 265:30, I (1993) caused their injuries and established the defendant's legal fault. RSA 265:30, I, provides:

> Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by RSA 265:31, II, and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection.

A special verdict form was submitted to the jury that asked if there was any legal fault on the part of the defendant. The jury answered "no," and therefore did not reach the second question as to whether there was any legal fault on the part of Karl F. Keeler. The plaintiffs' motion to set aside the verdict and for a new trial was denied, and this appeal followed.

The plaintiffs argue that the trial court erred in denying their motion to set aside the verdict and grant a new trial. "We will set aside a jury verdict if it is conclusively against the weight of the evidence or if it is the result of mistake, partiality, or corruption." *Quinn Bros., Inc. v. Whitehouse*, 144 N.H. 186, 190, 737 A.2d 1127, 1130 (1999) (quotations omitted). The plaintiffs argue only that the jury verdict was against the weight of the evidence, and accordingly we so limit our review. "Conclusively against the weight of the evidence should be interpreted to mean that the verdict was one no reasonable jury could return." *Id.* (quotation omitted). "We will uphold the trial court's decision on a motion to set aside a verdict unless the decision was made without evidence or the court abused its discretion." *Mullin v. Joy*, 145 N.H. 96, 97, 749 A.2d 826, 827 (2000).

The plaintiffs contend that the "collision establishes that the motorcycle constituted an immediate hazard, and that the defendant's failure to yield the right of way was [the] caus[e] of the accident." We disagree. In *Eckhart v. Linaberry*, 113 N.H. 652, 312 A.2d 704 (1973), we examined the meaning of the phrase "immediate hazard" in the former left turn statute, RSA 262-A:28 (Supp. 1963). We concluded that

> [t]he word "immediate" must be presumed to have some meaning and would indicate that the legislature intended that the hazard not be remote. Distinguishing between an immediate hazard and one not immediate would seem to allow for the exercise of some judgment on the part of the

. . . driver and militates against fault being presumed from the mere fact of a collision.

*Eckhart*, 113 N.H. at 655-56, 312 A.2d at 707.

The plaintiffs' contention that *Eckhart* was overruled by *Dyer v. Herb Prout & Co.*, 126 N.H. 763, 498 A.2d 715 (1985), is without merit. In *Dyer*, we held that it was reversible error to give the jury a "pure accident" instruction because "it may be misunderstood as a separate ground of non-liability, [and] because it has a cumulative effect as but one more 'you-should-find-for-the-defendant' type of instruction." *Id.* at 766, 498 A.2d at 717. That holding neither abrogates *Eckhart* nor allows a violation of RSA 265:30, I, to be presumed merely because an accident occurred. Therefore, *Eckhart* still stands for the proposition that a collision alone should not lead to fault being presumed.

█ A defendant violates RSA 265:30, I, if he fails to stop at the intersection and then fails to yield to a vehicle that has either entered the intersection or is approaching the intersection so closely as to constitute an immediate hazard. The "immediate hazard" language "means so close that the ordinary man of average prudence placed in the position of the [defendant] would conclude that there was a danger of collision if he were to" proceed through the intersection. *Eckhart*, 113 N.H. at 656, 312 A.2d at 707.

After a close examination of the record, we hold that there was sufficient evidence from which a reasonable jury could find that the plaintiffs' motorcycle did not constitute an "immediate hazard" at the time the defendant decided to proceed through the intersection. A jury could find that the defendant stopped his pick-up truck at the intersection, thus meeting the first requirement of RSA 265:30, I. A jury could also find that the motorcycle did not constitute an immediate hazard at the time the defendant pulled out into the intersection. An eyewitness, James Franklin, testified that when he pulled up to the intersection across from the defendant, the defendant was already stopped at the intersection. Franklin observed the motorcycle at least six hundred feet away from the intersection. This witness observed the defendant look in both directions, and then pull out into the intersection at a normal speed. He also testified that four seconds after first looking in the direction of the motorcycle, he looked again and saw that the motorcycle was now only one hundred and fifty or two hundred feet away from the intersection. Although he admitted that he decided not to pull out into the intersection, he testified that the first time he looked in the direction of the motorcycle he considered it safe to pull out. Thus a

jury could find that the motorcycle was some six hundred feet away when the defendant first began to enter the intersection and did not constitute an immediate hazard.

An accident reconstructionist testified that based on the eyewitness's observations, the motorcycle would have been traveling at an average speed of sixty-eight miles per hour as it approached the intersection, well above the posted speed limit of thirty-five miles per hour. *See Eckhart*, 113 N.H. at 657, 312 A.2d at 707 (jury could conclude that ordinary person would not anticipate individual traveling fifty-five miles per hour in thirty-five mile per hour zone). Thus, while not uncontroverted, there was an implication of speeding presented to the jury as an explanation for the accident.

■ The plaintiffs contend that the defendant's failure to see the motorcycle, perhaps because his view in the direction of the approaching motorcycle was obstructed, means that his entrance into the intersection was unreasonable. While the defendant gave conflicting testimony about how far down the road he could see in the direction of the motorcycle, this does not mean that the jury acted unreasonably in returning a defendant's verdict. The defendant's testimony that he never saw the motorcycle until the collision occurred does not negate the eyewitness's observation of the distance the motorcycle was from the intersection. The eyewitness testified that he had a better view in the direction of the approaching motorcycle than the defendant did. The jury was taken to the scene of the accident and had an opportunity to observe the intersection and determine what view the defendant had in the direction of the approaching motorcycle. Thus, a jury could reasonably find that the motorcycle was not "so close that the ordinary man of average prudence placed in the position of the [defendant] would conclude that there was a danger of collision if he were to" proceed through the intersection. *Eckhart*, 113 N.H. at 656, 312 A.2d at 707. We therefore conclude that the jury verdict was not conclusively against the weight of the evidence and that the plaintiffs are not entitled to a new trial.

The plaintiffs also contend that because the jury incorrectly found that the defendant was without legal fault for the accident, it erroneously failed to award the passenger, Sharon, any recovery because no evidence was presented as to her comparative negli-

gence. Having held that the jury could reasonably find that the defendant was not negligent, this argument is moot.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.